```
                UNITED STATES DISTRICT COURT           FILED
                NORTHERN DISTRICT OF ALABAMA
                    NORTHEASTERN DIVISION          00 JUN 23 PM 3:53

                                                   U.S. DISTRICT COURT
JAMES W. BROWN and BRENDA G.      )                  N.D. OF ALABAMA
BROWN,                            )
                                  )
     Plaintiffs,                  )
                                  )
vs.                               ) Civil Action No. CV-00-S-1074-NE
                                  )
                                  )
OAKWOOD MOBILE HOMES, INC.,       )                   ENTERED
OAKWOOD ACCEPTANCE CORPORATION,   )
                                  )                   JUN 23 2000
     Defendants.                  )
```

## MEMORANDUM OPINION

This action is before the court on defendants' motion to compel plaintiffs to submit their claims to arbitration (doc. no. 8), and plaintiffs' motion to permit limited discovery (doc. no. 11). For the reasons stated below, the court finds that defendants' motion is due to be denied.

### I. BACKGROUND

Plaintiffs, James W. Brown and Brenda G. Brown, agreed to purchase a mobile home from defendants on March 8, 1998, and signed a "Business Arrangement Disclosure Statement" form, acknowledging that "OMH [Oakwood Mobile Homes, Inc.] and OAC [Oakwood Acceptance Corporation[1]] is each a wholly-owned subsidiary of OHC [Oakwood

---

[1] According to the disclosure statement, OAC "provides lending or financing" for the purchase of a mobile home, as well as arranges for various types of insurance and extended warranties. *See id.* at A.



Homes Corporation]...."[2] Plaintiffs returned to Oakwood Mobile Homes, Inc. during August of 1998, and executed more documents.

Defendants argue that one of the documents signed by plaintiffs on August 31, 1998 was an arbitration agreement. They have submitted copies of this agreement, purportedly bearing the signatures of both plaintiffs, as well as the signature of Bryan Munger, OMH's general manager. They contend this agreement binds plaintiffs to resolve "[a]ll claims, disputes and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the home or any ... insurance products[,] ... or arising out of the finance of the home" by binding arbitration.

Plaintiffs, however, deny signing an arbitration agreement during either March or August of 1998. They assert the signatures on the document submitted to this court are forgeries. Plaintiff Brenda G. Brown avers:

> Our agreement with Oakwood Mobile Homes is not the same as the documents that were filed as exhibits with the defendant's Motion to Compel Arbitration and did not include an arbitration agreement.
>
> ...
>
> I signed documents on two occasions, once in March 1998 and once in August 1998. Mary Taylor [one of defendants' salespersons] was present at both occasions when I signed documents and she was the only person present, except my

---

[2] *Id.*

2

husband, in March of 1998 and the only other person present in August of 1998 was the real estate lady from Birmingham, Alabama, who handled the closing. I did not sign an arbitration agreement at either time. I looked at the arbitration agreement that was attached to the defendant's Motion to Compel Arbitration and can state that is not my signature nor is it the signature of my husband nor did I sign his name to that document. ... In fact, [I have talked to Mary Taylor and] she has stated to me that to the best of her knowledge I nor my husband signed an arbitration agreement.

...

Bryan Munger was never present when I signed any documents. ... I not only did not sign the arbitration agreement in his presence, I did not sign any document in his presence. When I discussed this with Mary Taylor, she stated that I signed all the documents in her presence and Bryan Munger was never present when I signed any documents.

I did not receive any documents at the closing. I finally received some documents shortly after April 25, 1999. ... Upon receiving some documents, I asked Oakwood Mobile Homes for the remainder of the documents and was told that I had received all the documents that were in our file. The documents that were furnished to me did not contain an arbitration agreement.

In the fall of 1999, I received papers from Oakwood Acceptance Corporation informing me that our mortgage payments were increasing instead of decreasing. ... I went to the Decatur office of Oakwood Mobile Homes and picked up copies of my file from the [new] General Manager, Dwight Aldridge. Among the documents in my file was an arbitration agreement but that agreement was not signed by me nor my husband nor Bryan Munger. ... [3]

Plaintiffs contend that a "*bona fide* issue as to the existence, *vel*

---

[3] Plaintiffs' exhibit 1.

3

*non*, of the arbitration agreement ... [entitles] such issue ... to be submitted for determination by a jury...."[4]

## II.  DISCUSSION

The United States Arbitration Act of 1925,[5] commonly referred to as the Federal Arbitration Act ("FAA" or "the Act"), which is codified at 9 U.S.C. §§ 1-16,[6] was "designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate, ... and place such agreements upon the same footing as other contracts." *Volt Info. Sciences v. Leland Stanford Jr. University*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (citations and internal quotation marks omitted).[7]  The Act's primary substantive provision is found in section 2, providing that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration <u>a controversy thereafter arising out of such contract</u> or transaction, or the refusal to

---

[4] Plaintiffs' brief at 2.

[5] United States Arbitration Act of 1925, ch. 213, 43 Stat. 883.

[6] The FAA was reenacted and codified in 1947 as Title 9 of the United States Code.  *See* Act July 30, 1947, ch. 392, 61 Stat. 669.  *See also* Gilmer v. Interstate/Johnson Lane Corp. 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991).

[7] *See also* H. R. Rep. No. 96, 68th Cong., 1st Sess., at 1-2 (1924):

> The need for the [FAA] arises from an anachronism of our American law.  Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction.

4

> perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis supplied). Section 3 provides for a stay of judicial proceedings while the parties arbitrate "any issue referable to arbitration under an agreement in writing...." 9 U.S.C. § 3.

Additionally, section 4 provides the mechanism by which parties may petition the court to compel arbitration, and directs the federal court to order arbitration "upon being satisfied that the making of the agreement for arbitration ... is not in issue...." *See* 9 U.S.C. § 4; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Section 4 also specifies, however, that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. As the Supreme Court has explained:

> Under § 4, ... the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." <u>Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the "making" of the agreement to arbitrate — the federal</u>

5

<u>court may proceed to adjudicate it.</u>

*Prima Paint*, 395 U.S. at 403-403, 87 S.Ct. at 1806 (emphasis supplied).

The purpose behind such a rule is grounded in the conclusion that "arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citations omitted). "Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson-Humphrey Company, Inc.*, 957 F.2d 851, 854 (11th Cir. 1992).

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. ... Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. ... The calculus changes when ... the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of an agreement, including the existence of an agreement to arbitrated. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not

6

have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. ...

*Chastain*, 957 F.2d at 854. Indeed, the party opposing arbitration is entitled to a trial by jury, provided he or she supplies "an unequivocal denial that the agreement had been made ... and some evidence ... to substantiate the denial." *Chastain*, 957 F.2d at 854 (quotation and citation omitted).

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (quoted with approval in *Cancanon v. Smith Barney, Harris, Upham & Company*, 805 F.2d 998, 1000 (11th Cir. 1986)).

### III. CONCLUSION

Based on the foregoing, defendants' motion to compel arbitration is due to be denied. Plaintiffs are entitled to

proceed with discovery and, ultimately to trial, to resolve the threshold issue of the existence of an agreement to arbitrate. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this **23rd** day of June, 2000.

_____
United States District Judge